**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

FRANKLIN DAVID HARRIS JR., et al.,

      Plaintiffs,

      v.

DANIEL COOLEY, et. al,

      Defendants.

Case No. 1:17-cv-540

Barrett, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Pursuant to local practice, this case has been referred to the undersigned magistrate judge for initial consideration and a report and recommendation on a multi-part motion filed on January 28, 2019.  In the motion, the *pro se* Plaintiffs seek the entry of default judgment under Rule 55(b), Fed. R. Civ. P., with the entry of final judgment to include unspecified sums for monetary damages, civil penalties, and an order directing permanent injunctive relief.  (Doc. 32).

Notwithstanding the fact that Entries of Default have been entered against each of the individual Defendants, the undersigned now recommends that Plaintiffs' Rule 55(b) motion be DENIED and that this case be DISMISSED for failure to state any viable claim. In the alternative, the undersigned recommends dismissal based upon abstention.

### I.    Analysis

### A.  Rule 55 Does Not Permit Judgment Without Liability

Plaintiffs, who are experienced *pro se* litigants,[1] proceed *in forma pauperis.* After certified mail of their original complaint proved ineffective, the Court directed service of

---

[1] Plaintiffs' prior federal cases include Case No. 1:89-cv-145 (civil rights); Case No. 1:91-mc-349; Case No. 1:91-mc-350; Lead Case No. 92-cv-323 (employment discrimination); Related Member Case No.1:92-cv-

the amended complaint upon all three individual Defendants, Daniel and Kaylay Cooley, and Chrissy Sprague, through ordinary mail. (Doc. 19, 20, 24, 25, 26, 27). When the Defendants failed to timely answer or respond, Plaintiff successfully sought entries of default under Rule 55(a) against all three Defendants.[2] (Docs. 24, 27, 28, 29, 31).

When the Clerk has filed an entry of default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. However, final judgment will not be entered under Rule 55(b) unless it appears that those allegations support liability as a matter of law. *See e.g., Johnson v. Levi Strauss*, 2009 WL 4806467 (S.D. Ohio Dec. 9, 2009) (default judgment cannot be entered when the complaint fails to state a claim upon which relief can be granted); *Anderson v. Johnson,* 194 F.3d 1311 (6th Cir. Nov. 4, 1999) ("Even if default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

Because I now conclude that Plaintiffs' amended complaint fails to state any claim, no default judgment can be entered, and this case instead should be dismissed.

> The granting of a motion for default judgment is "at all times left within the sound discretion of the court." *In re Irby*, 337 B.R. 293, 294 (Bankr. N.D. Ohio 2005) (applying Federal Rule of Bankruptcy Procedure 7055, which incorporates Federal Rule of Civil Procedure 55). Courts have recognized, however, that "[i]t is fundamental that not all injuries are legally compensable; a tenet which may not be bypassed simply because a party fails to respond to a complaint. Thus, among the considerations a court is

---

324 (employment discrimination), Member Case No. 1:93-cv-401 (employment discrimination); Case No. 1:93-mc-93; Case No. 1:95-cv-29 (employment discrimination); Case No. 1:97-cv-156 (civil rights); Case No. 1:02-cv-475 (Fair Housing Act); Case No. 1:05-cv-432 (negligence), Case No. 1:05-cv-84 (employment discrimination); Case No. 1:11-cv-179 (employment discrimination). In addition to the above-captioned cases, on October 9, 2018, Plaintiffs have appealed the U.S. Bankruptcy Court's order dismissing Plaintiff's adversary proceeding. See Case No. 1:18-cv-712.

[2] Notwithstanding the different surname of Ms. Sprague, all three individual Defendants are referred to as the Cooley Defendants for the convenience of this Court.

to employ when determining the propriety of entering a judgment by default is whether there exists a sufficient basis in the pleading for the judgment's entry; or similarly, whether a viable cause of action is alleged." *Id.* (citations omitted). *See also Certain Underwriters at Lloyd's, London v. Alkabsh*, No. 09-2711, 2011 WL 938407, at * 8 (W.D. Tenn. March 15, 2011) ("The first step when faced with an entry of default and a motion for default judgment is to determine whether the complaint's factual allegations provide a sufficient legal basis for the entry of a default judgment.") Where a complaint fails to state a claim, a motion for default judgment should be denied. *See Bailey v. Harrison*, No. 95-6263, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) ("Default judgments would not have been proper due to the failure to state a claim against these defendants"); *see also Parks v. Conley*, No. 98-5064, 1999 WL 195740, at *2 (6th Cir. Mar. 23, 1999) (denying motion for default judgment and granting summary judgment in favor of the opposing party); *Starr v. Corley*, 662 F. Supp. 219, 220 (N.D. Ohio 1987) (denying motion for default judgment where complaint failed to state a claim for which relied could be granted). When considering whether a complaint states a claim in relation to a default judgment, the court accepts the allegations in the complaint as true. *General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010); *Cook*, 2006 WL 908600, at *3 (same).

*White v. Parker*, 2018 WL 1279545, at *3 (E.D. Tenn., 2018).

## B.  Surviving Screening Does Not Preclude Later Dismissal

Shortly after Plaintiffs initiated this lawsuit, the undersigned screened the complaint under the authority of 28 U.S.C. § 1915(e)(2)(B)(ii).  The undersigned allowed Plaintiffs' case to proceed beyond screening based on the "liberal pleading standards applied to pro se pleadings, as well as the extremely low threshold used in screening cases under 28 U.S.C. §1915(e)." (Doc. 7 at 5).  Plaintiffs subsequently filed a lengthy amended complaint, which the undersigned chose not to further screen at that time "for reasons of judicial economy, and because the allegations in the first amended complaint appear to be closely aligned to those in the original complaint."  (Doc. 18 at 4).   The fact that Plaintiffs' original complaint survived preliminary screening does not preclude the *sua sponte* dismissal of their amended complaint at this time, in the context of the more

rigorous review of the amended complaint required prior to entry of a default judgment.[3] *See generally Neitzke v. Williams*, 490 U.S. 319, 328, 109 S. Ct. 1827 (1989) (distinguishing between screening for frivolousness under §1915(d) and Rule 12(b)(6) standards).

Although the amended complaint supersedes the original complaint, the prior analysis remains relevant due to the noted similarities between the two pleadings.  In that analysis, quoted at length for the Court's convenience, the undersigned explained that permitting the claims to proceed beyond screening was not a determination of their ultimate viability, but rather was limited to the conclusion that – despite it being "*very close*" (Doc. 7 at 5, emphasis added) - the claims were not subject to *immediate* dismissal.

In both their original and amended complaints, Plaintiffs identify as African American and identify the Cooleys and Ms. Sprague as Caucasian.   Other than the alleged difference in races between the parties, however, the undersigned explained the facially apparent difficulty in discerning the grounds for liability under § 818 of the Fair Housing Act, 42 U.S.C. § 3617:

> Plaintiffs' allegations – while indicative of abhorrent behavior and incivility between neighbors – may fall short of the type of discriminatory conduct that Congress intended to regulate under the Fair Housing Act. *Accord Franco-Ward v. Nations Credit Corp.*, 2000 WL 875894 (6th Cir., June 20, 2000) (affirming dismissal of retaliation and intimidation claims under 42 U.S.C. §3617, because plaintiffs' allegations of racial discrimination were conclusory and unsupported by factual allegations to support claims).…
>
> …Plaintiffs' complaint alleges that their neighbors' conduct towards Plaintiffs constituted race-based discrimination not because of any overt or direct evidence of such discriminatory animus, but based upon indirect evidence. Specifically, Plaintiffs allege that they are African-American, while Defendants are Caucasian, and that Defendants made no similar

---

[3] Arguably, the undersigned also could recommend dismissal of the amended complaint under 42 U.S.C. § 1915(e) at this time.  However, the obvious applicability of Rule 55 standards to Plaintiffs' pending motion for default judgment renders moot any further review under § 1915.

complaints to authorities and made no similar threats against other white neighbors who had a similar privacy fence/gate that appears to be the source of contention between Plaintiffs and Defendants.

The primary provisions of the Fair Housing Act, as amended, generally prohibit discrimination in the sale or lease of real property. Since Plaintiffs allege that they purchased their home nearly 23 years ago and have continually resided in that home since their purchase, they do not seek recourse under the primary substantive provisions of the FHA. Instead, Plaintiffs rely upon 42 U.S.C. § 3617, which makes it unlawful "to coerce, intimidate, threaten, or interfere" with the exercise or enjoyment of any rights protected by the FHA's substantive provisions. 42 U.S.C. § 3617.

> To make out a prima facie case under Section 3617, a plaintiff must show "more than a 'quarrel among neighbors' or an 'isolated act of discrimination,' but rather ... a 'pattern of harassment, invidiously motivated.'" *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir.2009) (quoting *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir.2004)). Prohibited interference is not limited to discrimination during the acquisition of a home, but "can take place at any time," including "post-purchase," as is potentially implicated here. *E.–Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 562 (7th Cir.2005).

*Novak v. Levenfeld Pearlstein*, 2014 WL 4555581, at *6 (N.D.Ill., Sept. 15, 2014). Courts use the burden shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), to evaluate claims of intentional discrimination under the FHA. *Michigan Protection and Advocacy Service, Inc. v. Babin*, 799 F. Supp. 695, 706 (E.D. Mich. 1992), *affirmed* 18 F.3d 337 (6th Cir.1994) ("a successful claim under § 3604 is not a prerequisite to the bringing of a claim under § 3617").

…[T]he named Defendants herein, through counsel, filed suit against Plaintiffs in Scioto County State Court on May 24, 2017, a date that precedes the date that Plaintiffs initiated this federal lawsuit. *See Cooley v. Harris*, Case No. 17CIH00071 (Scioto County Court of Common Pleas)…. The Trustee describes the Cooleys' Complaint as seeking "removal of a fence that straddles a property line, perpendicularly, and a determination of property line boundaries…" (Doc. 5 at 1). The Trustee additionally reports the existence of a third related adversary proceeding recently filed by Plaintiffs in Bankruptcy Court, Case No. 1:17-ap-01041.
…

The undersigned's preliminary review of post-acquisition claims of discriminatory interference or harassment under 42 U.S.C. § 3617 reveals relatively limited case law on the issues presented, but confirms that a

neighbor-against-neighbor claim may exist under some circumstances. *See generally Wells v. Rhodes*, 928 F. Supp.2d 920, 932- 933 (S.D. Ohio 2013) (holding, despite recognition that "the FHA was not designed 'to convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case,'" that evidence of "burning a cross on front lawn with 'KKK will make you pay' and the N-word written on it, is certainly interference (or perhaps more accurately a threat or intimidation) within the broad meaning of § 3617.") (internal citations omitted); *contrast Sheikh v. Rabin*, 565 Fed. Appx. 512 (7th Cir. 2014)(dismissing FHA claims for failure to state any claim of interference under FHA); *French v. Hornsby*, 2006 WL 686375 (M.D. Tenn, March 13, 2006) (holding there was "absolutely no application of the Fair Housing Act" to property line dispute between neighbors who had previously litigated their dispute in state court; *Diggs v. Paragon Management Group, Inc.*, 2014 WL 1302504 (E.D. Tenn. March 28, 2014) (granting motion to dismiss FHA claims for failure to state a claim of race discrimination).

(Doc. 7 at 5-8, internal footnote omitted).

The above analysis remains applicable to the amended complaint. However, for the reasons explained below, including but not limited to the related state court proceedings that provide context for Plaintiffs' allegations, the undersigned now concludes that the amended complaint should be dismissed for failure to state any claim as a matter of law.

### C. Dismissal Is Now Appropriate for Failure to State a Federal Claim

#### 1. Related Proceedings

Significantly, both Plaintiffs' original and amended complaints conspicuously omit any reference at all to the underlying property line dispute between the parties. Yet it is clear that the pre-existing property dispute contextually underlies all of the allegations in the amended complaint. A court may take judicial notice of other judicial proceedings. *See generally Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010); *see also In re DeLorean Motor Co.*, 91 B.R. 766, 769 (Bkrtcy.E.D.Mich.,1988) (citing 10A *C. Wright, A. Miller & M. Kane,* Federal Practice and Procedure Civil 2d § 2723

(1983) for the proposition that "[i]t is settled that the court may take judicial notice of other cases that involve the same subject matter or present issues of a related nature between the same parties."). The undersigned became aware of the existence of the parties' underlying property dispute in the course of screening the original complaint. In light of the Plaintiffs' ongoing bankruptcy, the undersigned requested a report from the Bankruptcy Trustee to verify that Plaintiffs were the real parties in interest in the above-captioned suit. While verifying that fact, the Trustee also pointed out: "The question now before the Bankruptcy Court, the U.S. District Court, and Scioto Common Pleas is which court is the proper venue for consideration of the Harris claims against the Cooleys, and where the Cooleys' property questions should be decided." (Doc. 5 at 6). The undersigned found it "inappropriate to resolve that question" given the limited scope of screening under 42 U.S.C. §1915(e), but stated it would not "foreclose[e] any affirmative defenses the Defendants may be able to raise in a motion to dismiss." (Doc. 7 at 8).

Even though the Defendants arguably have forfeited any affirmative defenses based upon their failure to appear, this Court still must evaluate the viability of Plaintiffs' asserted claims under Rule 55(b), because a default judgment cannot be entered in the absence of liability. As previously stated, it was a "very close" threshold issue as to whether to permit Plaintiffs' claims to proceed beyond the "extremely low" standards of initial screening. Taking a closer look in view of the pending motion for default judgment, it is now apparent that Plaintiffs have failed to state *any* federal claim in their amended complaint as a matter of law. Therefore, *sua sponte* dismissal is appropriate.

The parties' underlying dispute concerns a privacy fence that the Plaintiffs maintain is part of their residential property, but that their next-door neighbors, the Cooleys, appear to believe was illegally constructed on their property. On May 24, 2017, through counsel, the Cooleys filed suit against Plaintiffs herein in the Scioto County Court of Common Pleas in order to resolve their ongoing property line dispute. The state court complaint alleges, in part, that the Cooleys had retained a surveyor in order to assist in resolving the dispute, but that their neighbors (the Harrises) refused to allow the surveyor "to enter the disputed property to determine the location of the boundary." *Cooley v. Harris*, Case No. 17-CIH-071, Complaint at ¶¶6-7.

The state court case has never proceeded to the merits, however, because Franklin and Gwendolyn Harris quickly alerted the state court that on July 7, 2015, they had filed for protection under Chapter 13 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Ohio. *See* Case No. 1:15-bk-12647. Based on the Bankruptcy Code, the automatic stay provisions remained in effect, foreclosing the Cooleys' state court lawsuit. After a number of documents were filed in state court that confirmed the existence of the ongoing bankruptcy case and automatic stay, the state court trial judge filed an order dated August 14, 2018 directing "that this matter is stayed pending the discharge of the debtors or the granting of a Motion for Relief from Stay by the United States Bankruptcy Court."[4]

---

[4] In Bankruptcy Court Case No. 1:15-bk-12647, the Cooleys filed a motion on October 1, 2018, through counsel, seeking relief from the automatic stay provisions in order to pursue their state court claims. (*Id.*, Doc. 46). However, the Cooleys' motion was denied by the Bankruptcy Court without prejudice to renew based upon the procedural defect of insufficient service of process under Federal/Local Rules of Bankruptcy Procedure. (*Id.*, Doc. 47). There is no indication in the bankruptcy record that the Cooleys ever corrected that procedural defect and/or re-filed their motion for relief from the stay.

In addition to requesting and receiving a stay from the Scioto County Court of Common Pleas, on August 30, 2017, the Harris Plaintiffs commenced a new pro se Adversary Proceeding against the Cooleys in Bankruptcy Court. *See* Case No. 1:17-ap-01041. In the Adversary Proceeding, the Harris Plaintiffs complained that the Cooleys had ignored the automatic stay by initiating their state court suit.[5] However, the Bankruptcy Court found no evidence that the Cooleys were aware of the bankruptcy case at the time they filed suit in state court, and reasoned that the Harris Plaintiffs had failed to "state in what way they have been damaged by these alleged violations of the automatic stay" given that the state court had entered a stay. *Id.* (Doc. 18, Order of 9/24/18). Consistent with the above-captioned case, in the Adversary Proceeding Plaintiffs sought injunctive relief to prevent damage to Plaintiffs' alleged property.

In their Adversary Proceeding, the Harris Plaintiffs also sought resolution of the same property line dispute that underlies the Cooleys' state court civil suit. Specifically, they asserted a "counter claim" before the bankruptcy court that they were entitled to

> adverse possession of a fence which separates their property from the [Cooleys'] property…. Additionally, the [Harris] Plaintiffs seek an injunction from this Court against the Defendants to prevent damage to the Plaintiffs' residence. Finally, the Plaintiffs seek a declaratory judgment which would void any findings by the state court that would arguably grant to the Defendants ownership of the disputed fence.

Adversary Case No. 17-ap-1041 (Doc. 18 at 2, Order Dismissing Adversary Proceeding on the Court's Own Motion; *see also id.*, Doc. 1, adversary complaint, seeking declaratory judgment that fence and gate became part of the Harris pre-petition bankruptcy estate through doctrine of "adverse possession" under state law, prior to the date the Cooleys

---

[5] Plaintiffs also filed a pro se motion for contempt in their main bankruptcy case, Case No. 15-12647, Doc. 30, asserting the same violations of the automatic stay. Plaintiffs later withdrew that motion after the state court stayed its proceeding.

acquired their property).  On September 24, 2018, the Bankruptcy Court dismissed the

Adversary Proceeding *sua sponte* after holding that the appropriate venue for the adverse

possession claim was in state court.  Case No. 1:17-ap-1041 (*Id.*, Doc. 18).[6]

### 2. No Viable Fair Housing Act Claims Exist

The provision of the Fair Housing Act on which Plaintiffs rely for their claims against

the Defendants in this case makes it unlawful "to coerce, intimidate, threaten, or interfere

with any person in the exercise or enjoyment of, or on account of his having exercised or

enjoyed, or on account of his having aided or encouraged any other person in the exercise

or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3506 of

this title." 42 U.S.C. §3617.[7]  Liberally construing the amended complaint, Plaintiffs allege

that Defendants have violated § 3617 by creating a "hostile environment" "because of

race" that violates the FHA.  *See generally* 42 U.S.C. § 3604.

There is no question that Plaintiffs' Fair Housing Act claim is atypical.  Most Fair

Housing Act claims bear some relationship to the acquisition of housing.  Post-acquisition

claims are sufficiently unusual that, despite consensus that such claims are cognizable in

*some* circumstances, courts have struggled to define the limits of such claims.  *See*

*generally Wetzel v. Glen St. Andrew Living Community, LLC,* 901 F.3d 856, 862 (7th Cir.

2018) (holding that Fair Housing Act may prohibit some types of severe or pervasive

---

[6] Plaintiffs have appealed the dismissal of their Adversary Proceeding to this Court. This same day, the undersigned has filed a Report and Recommendation in Case No. 1:18-cv-712 recommending that the Bankruptcy Court's Order of Dismissal be affirmed.

[7] Plaintiffs state that they repeatedly advised the Defendants herein as well as various City officials of their belief that Defendants' conduct violated the Fair Housing Act.  Although § 3617 prohibits discrimination in housing based on the exercise of FHA rights, it is doubtful that a claim could be founded on the mere assertion of an unreasonable subjective belief that unlawful discrimination has occurred.  *See Pelot v. Criterion 3, LLC,* 157 F. Supp.3d 618, 622-23 (N.D. Miss. 2016); *see also Kuzmmicki v. Hanrahan,* 2018 WL 2088745 *9 (D. Nev. May 4, 2018) (complaining to police is not protected conduct under the FHA, dismissing conclusory FHA §3617 claim against neighbor), adopted at 2018 WL 3577246 (D. Nev. Jul. 25, 2018).

harassment by neighbors); *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d at 330 (suggesting FHA would not cover a "simple quarrel between two neighbors or [an] isolated act of harassment").

Plaintiffs' claim here is also unusual because Plaintiffs have not filed suit against a person or entity connected with the acquisition or lease of their residence, but instead seek recovery against a single set of next-door neighbors who moved in more than two decades after Plaintiffs had resided in their home without incident.[8]  *Compare Halprin,* 388 F.3d 327 (holding that claim was stated against homeowners' association and multiple neighbors who allegedly "gang[ed] up" on Jewish neighbors by engaging in pattern of harassment that included writing "H-town property" (short for "Hymie Town") and vandalizing the plaintiffs' property); *see also Cox v. City of Dallas*, 430 F.3d 734, 745 (5th Cir. 2005) (holding that FHA limits § 3604(b) claims  to those alleging a relationship between the services or facilities at issue and the sale or lease of a residence).

In support of their ability to bring what Plaintiffs describe as "interference" or "harassment" FHA claims against their new neighbors under §3617, Plaintiffs rely chiefly upon Rule 24 C.F.R. §100.600, a final rule adopted by the U.S. Department of Housing and Urban Development ("HUD") on September 14, 2016 and made effective on October 14, 2016.   *See* 81 FR 63054-01, 2016 WL 4762170 (Sept. 14, 2016).   As Plaintiffs point out, the new rule prohibits, in relevant part, "hostile environment harassment because of race…."  *Id.*, 24 C.F.R. §100.600(a); *see also* 24 C.F.R. § 100.400(c)(2), prohibiting "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color…or national origin of such persons, or of visitors or associates

---

[8] Plaintiffs allege that virtually all of their neighbors are Caucasian but that they never experienced any discrimination before May 10, 2016, when the Cooley Defendants moved next door.

of such persons."  Plaintiffs complain that various incidents between June 21, 2016 and July 17, 2017 amount to harassment because of race.

Roughly half of the referenced incidents occurred prior to the effective date of the new Rule, although some are alleged to have occurred after October 14, 2016.  The Sixth Circuit has not yet determined whether the Rule can provide the basis for liability prior to its effective date.  *But see Francis v. Kings Park Manor*, Inc., 917 F.3d 109 (2nd Cir. 2019) (holding that rule was interpretive and that §3617 prohibited landlord's pre-Rule failure to abate earlier tenant-on-tenant discrimination where landlord knew of racially discriminatory conduct and had the power to address it, but failed to take corrective action).  Even assuming that § 3617 prohibited the same conduct prior to the enactment of the Rule, the conduct about which Plaintiffs complain falls short of the "severe or pervasive" discrimination under which liability could arise, because Plaintiffs have failed to adequately allege any racial animus beyond their own subjective beliefs. *See generally, Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584–85 (6th Cir. 1992) (plaintiff's subjective belief insufficient to maintain claim of race discrimination in employment context).

In contrast to the vast majority of cases in which post-acquisition neighbor-against-neighbor claims have been recognized, Plaintiffs' amended complaint does not allege any direct or overt race-based discrimination by the Cooleys.  *See, e.g.*, *Francis v. Kings Park Manor, Inc.*, 917 F.3d at  114-115 (setting forth a "brazen and relentless campaign of racial harassment, abuse, and threats" involving multiple references on multiple occasions to "Jews, f***ing Jews, and the N-word, and including unambiguous threats such as "I oughta kill you, you f***ing n***er."); *Halprin*, 388 F.3d 327 (describing multiple

incidents that followed vandalization of property that included a derogatory reference to plaintiff's Jewish religion written on their wall).  Consistent with other Circuits, the Sixth Circuit has held that "a plaintiff must show proof of intentional discrimination" to establish FHA claim, including under §3617. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012).   In the context of a § 3617 claim, "the conduct complained of must…be of sufficient magnitude to permit a finding of intimidation, coercion, threats or interference." *Sporn v. Ocean Colony Condominium Ass'n*, 173 F. Supp.2d 244, 252 (D.N.J. 2001) (collecting and contrasting cases in which conduct sufficiently severe or pervasive has been found to state a §3617 claim with plaintiff's legally insufficient allegations).

Of course, circumstantial evidence can be sufficient to prove intentional discrimination.  To determine whether a plaintiff has stated a prima facie case based upon indirect or circumstantial evidence, courts employ the familiar *McDonnell Douglas* burden-shifting framework.[9]  "[T]he prima facie case operates as a flexible evidentiary standard" and not a "rigid pleading standard." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  At the same time, however, "broad and conclusory allegations of discrimination cannot be the basis of a complaint and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims."  *HDC, LLC*, 675 F.3d at 614 (holding that plaintiffs had failed to state FHA claim through conclusory allegations).

Here, Plaintiffs' allegations that the Cooleys harassed them because of their race are so conclusory as to fail to state a claim.  *See Franco-Ward v. Nations Credit Corp.*,

---

[9] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817 (1973).

221 F.3d 1334 at *1 (6th Cir. June 20, 2000) (affirming dismissal of "entirely conclusory" claims of racial discrimination under FHA); *East-Miller v. Lake County Highway Dept.*, 421 F.3d at 563 (holding that black plaintiff who moved to white neighborhood failed to establish "essential element" of race discrimination based on circumstantial evidence consisting of damage to mailbox four or five times in six-year period, snow plowed into her driveway, and headlights shining). Close review of Plaintiffs' allegations confirms that they do not give rise to any inference that the Cooleys' alleged "harassment" was motivated by race. Rather, the alleged facts confirm the existence of no more than a neighbor-against-neighbor quarrel over a disputed property line.

Plaintiffs' pro se complaint is quite lengthy, comprised of 23 single-spaced pages, to which 43 additional pages of exhibits are attached.[10] The amended complaint does not comply with Fed. R. Civ. P. 8, which requires a "short and plain statement" of jurisdiction and of the grounds for relief. Be that as it may, the undersigned has carefully reviewed the amended pleading, recognizing that pro se pleadings must be liberally construed. Still even a pro se complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). The undersigned recommends denial of Plaintiffs' Rule 55 motion and dismissal of the amended complaint because the allegations fail to connect the Defendants' conduct to racially-based discriminatory animus.

---

[10] The exhibits, like the complaint, are also typed in single-spaced font. The first 20 pages of exhibits consist of the Plaintiffs' affidavits; the remaining 23 pages primarily consist of pages from the Federal Register relevant to HUD rules enacted on September 14, 2016.

For example, Plaintiffs complain repeatedly that the Defendants own a "large pit bull" that frightened Plaintiffs either when it was nearby (on *Defendants*' property) as well as when it trespassed onto Plaintiffs' property or sidewalk in August or September 2016 after Defendants let the dog out their front door. (*See, e.g.*, Doc. 10 at ¶¶14- 16). Despite Plaintiffs' conclusory allegations that Defendants used the dog as "a weapon of terror," nothing suggests racially motivated harassment, much less the type of severe or pervasive circumstances that would be sufficient to elevate a neighbor-against-neighbor quarrel to a federal Fair Housing Act claim. Examination of the remainder of Plaintiffs' 23 pages of similar allegations results in a similar conclusion.

Plaintiffs' repeatedly complain of verbal "threat[s]." However, the referenced "threats" overwhelmingly relate to the underlying property line dispute, and Defendants' apparent belief that they were entitled to remove the disputed fence and/or gate. For example, Plaintiffs allege that on multiple occasions, Defendants would make statements that they intended to contact various Portsmouth City officials (police, the Mayor, and the City Engineer) to complain about the disputed fence and gate. (*Id.* at ¶¶10-11, alleging that Defendants stated that city officials told Defendants that Plaintiffs' fence was "illegal."). On one occasion, Plaintiffs allege that the Cooleys stated: "I will call the Portsmouth Police Officers and they will come and stand there and watch me and allow me to 'dismantle and take down your fence and gate and there is nothing Y[']all can do about it." (*Id.* at ¶17).

Plaintiffs emphasize that the city officials that Defendants contacted or threatened to contact were white, but that fact has no bearing on whether or not Defendants' conduct in contacting those officials was "because of race." Plaintiffs' appear to believe that city

officials were used as instruments of racial harassment. Undermining that premise, Plaintiffs allege that when they themselves called police, an officer warned the Cooley Defendants that they were not to tear down the disputed fence without a court order. (*Id.* at ¶26). Plaintiffs allege that the "White Director Portsmouth City Engineer Office" similarly informed the Cooleys that they were not permitted to tear down the disputed fence without a court order. (*Id.* at ¶42).

The only other connection to "race" that Plaintiffs allege is that the Cooleys did not make any complaints to City officials about "white home owners who lived across the street" who allegedly had a similar privacy fence made of wood rather than metal. (*Id.* at ¶¶19, 27). Although a plaintiff may be able to establish a discrimination claim under the FHA based upon a disparate treatment or disparate impact in some circumstances (i.e., a landlord who charges higher security deposits on the basis of race or other protected status), the undersigned can find no legal support for the extension of that case law to include alleged post-acquisition "disparate treatment" by a neighbor who complains about a neighbor with whom he is engaged in a property line dispute, but does not lodge complaints against more distant neighbors with whom he is not engaged in a property line dispute. If nothing else, the other homeowners cannot be viewed as "similarly situated" based on the facts as alleged. *See Walton v. Claybridge Homeowners Ass'n, Inc.*, 191 Fed. Appx. 446, 451 (7th Cir. 2006) (holding that plaintiff had failed to create inference of discrimination based on homeowners association's alleged harassment against her, because she failed to show her white neighbors were similarly situated).

Plaintiffs further allege that on October 13, 2016, the Cooleys filed a complaint with the City Health Department concerning Plaintiffs' property, complaining of weeds and

branches, but made no complaints against white neighbors whose homes border the same alley.[11] (Doc. 10 at ¶¶ 28-30). On other occasions, the Cooleys allegedly threatened to call the Health Department to have Plaintiffs' house "condemned," in an attempt to "force them to move." (*Id.* at ¶ 35). Plaintiffs acknowledge receiving a code citation from the Health Department but allege that citation was "racially discriminatory" because the non-party official who issued it was white and other white homeowners were not cited.

Plaintiffs' premise that city officials are required to investigate properties about which no complaint has been made defies logic. In any event, no city officials are named as defendants and the Plaintiffs' receipt of a citation does not reasonably lend itself to an inference of racial discrimination by the Cooleys.

The amended complaint alleges that various members of the Cooley family (including non-party children) damaged Plaintiffs' property, but again, the allegations relate exclusively to the property line dispute and do not reasonably give rise to an inference of intentional discriminatory conduct based on race. For example, Plaintiffs allege that Daniel Cooley hit and kicked the privacy fence gate while threatening to "take down" the disputed fence and gate on September 21, 2016. (*Id.* at ¶22). Plaintiffs allege that on October 11, 2016, the Cooleys "hired a white unknown male" to tear down the disputed privacy fence gate, but that when Plaintiffs threatened that individual with a lawsuit, he retreated. (*Id.* at ¶24). Plaintiffs allege that Daniel Cooley responded by stating: "You Mother F***er you just wait[] and see you Mother F***er [you're] going to get yours . [I'm] going to get you." (*Id.* at ¶25, punctuation and spelling corrected).[12] Plaintiffs

---

[11] Plaintiffs do not allege that anyone else is engaged in an ongoing property line dispute.
[12] The amended complaint alleges that Defendants repeated similar threats on multiple occasions.

allege that on January 3, 2017, Defendant Daniel Cooley "with the assistance of a white unknown third party Kicked in us Harris Plaintiffs Garage Door Panel…." On other occasions including May 30 and July 17, 2017, Plaintiffs allege that the Cooley Defendants "permit[ted their…Three White Kids…to damage" the disputed privacy fence and gate by jumping, hitting kicking and pulling on the gate panels. (*Id.* at ¶¶ 44-46). This Court in no way condones such conduct, assuming the truth of the allegations. However, none of the allegations give rise to an inference of discrimination "because of race."

Other alleged examples of racially-charged discriminatory conduct by unidentified "third parties" associated with the Defendants similarly fail to state a claim, notwithstanding Plaintiffs' characterization of the incidents in racially charged and often shocking language.[13] For example, Plaintiffs allege that the Defendants "would recruit…white third parties" who would "drive their motorcycles, trucks, [and other] vehicles" from Kentucky to Ohio to the Cooley's home. (*Id.* at ¶6). Given that Defendants moved from nearby Kentucky, it is reasonable to assume that friends from that state might visit them in Ohio. No claim is stated by the mere appearance of Caucasian guests at the Defendants' home.

Of course, Plaintiffs allege that the purpose of the visits was more nefarious. One of the most disturbing allegations includes a reference to "fire bombing." Specifically, Plaintiffs allege in conclusory fashion that the Cooley Defendants invited "white third parties" to the Defendants' home on September 30, 2016 in order to

> participate and assist the Defendants,,, **in terrifying verbal threats, hostile harassment's, intimidation's, coercions of <u>FIRE BOMBING</u>**

---

[13] Plaintiffs repeatedly allege that based on multiple incidents, they "feared for our lifes [sic]" (*See, e.g.*, Complaint at ¶¶4, 17, 20, 32, 38, 48, 50, 52, 54, 58, *see also Id.*, Demand for Relief at ¶¶3, 4, 5, 6, 8; Doc. 10-1 affidavits of Franklin Harris and Gwendolyn Harris).

**OUR HOUSE, verbal threats, hostile harassment, intimidation's, coercions OF <u>DAMAGING AND DESTROYING HARRIS PLAINTIFFS PROPERTY</u>.**

(Doc. 10 at ¶6, emphasis and punctuation original; *see also id.* at ¶9). The unidentified "white third parties" allegedly remained on the Defendants' property on September 30 and no additional reference to "fire bombing" or details of the "verbal threats" are provided. However, an affidavit attached to the pleading avers that when the group of "unknown white" persons were gathered on the Cooleys' porch, "the discussion of **FIRE BOMBING CAME UP 'WELL WE CAN'T FIRE BOMB THEM**.'" (Doc. 10-1, affidavit of Franklin Harris at ¶12, emphasis original). Needless to say, an isolated overheard comment by an unidentified associate of the Cooleys is insufficient to state an FHA claim against the Defendants. Even if this stray comment is construed as suggestive of racial bias, it is too isolated to support an FHA claim against the Cooleys. *Accord Walton*, 191 Fed. Appx. at 452 (holding that use of clear racial slur by Board member was too attenuated from homeowner association's actions, and that "an isolated racial or religious slur made in the context of a neighborhood quarrel does not a federal discrimination case create."); *Halprin*, 388 F.3d at 330 ("[W]e do not think Congress wanted, to convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case.")

Plaintiffs also claim that unknown associates of the Cooleys damaged Plaintiffs' car on two occasions. First, on June 21, 2016, Plaintiffs allege that an "unknown white third party friend" of the Cooleys damaged Plaintiffs' car "by spray painting green paint down the driver side doors." (*Id.* at ¶ 8). No other details are included. Plaintiffs allege that months later, on October 2, 2016, an "unknown white Male who drove [a] Red Truck" walked over to Plaintiffs' nearby parked car and "walked down the driver side," again

damaging Plaintiffs' vehicle. (*Id.* at ¶ 7). Plaintiffs allege that "other unknown white Males and white females **ALL LAUGHED OUT LOUD**" and the unidentified perpetrator returned to a group gathered on Defendants' porch. (*Id.* at ¶7, emphasis original). The two allegations involving damage to Plaintiffs' car by unknown non-party males fail to show (or even imply) that the *Defendants* have engaged in severe or pervasive harassment based on race.

Relating another incident, Plaintiffs allege that Defendant Chrissy Sprague intentionally drove her SUV onto the sidewalk toward Plaintiff Franklin Harris and his daughter on October 19, 2016, stopping only after seeing a nearby police officer. (Doc. 10 at ¶ 37-38). Again, while reprehensible if true, the complaint fails to explain how this alleged conduct was "because of race." Plaintiffs' subjective belief that the Defendants were violating the Fair Housing Act does not make it so. (*See e.g.*, Doc. 10 at ¶40, alleging that the Cooley Defendants either ignored Plaintiffs' warnings that they were violating the FHA or laughed and "mocked" them for asserting their civil rights). *See Sporn*, 173 F. Supp.2d at 251 (finding granting summary judgment to defendants on §3617 claim where plaintiff failed to show more than "subjective beliefs of intentional discrimination and retaliation" to prove "intentional discriminatory animus.") (internal citations omitted).

In short, and accepting all factual allegations as true, the undersigned concludes that Plaintiffs have failed to state any viable FHA claim against the Defendants on which a default judgment could be entered. To the contrary, close examination of the allegations requires dismissal of Plaintiffs' FHA claims as a matter of law. *Accord Sheikh v. Rabin*, 565 F3d. Appx. 512, 518 (7th Cir. 2014) (affirming dismissal of FHA claims against city

officials and neighbors, holding that isolated acts and statements from multiple neighbors with minimal references to race could not support FHA claim); *Diggs v. Paragon Management Group, Inc.*, 2014 WL 1302504 (E.D. Tenn. Mar 28, 2014) (dismissing plaintiff's post-acquisition FHA claims against homeowners association based on plaintiff's failure to allege facts that connected the alleged harassment to her race); *French v. Hornsby*, Case No. 3:05-cv-462, 2006 WL 686375 (M.D. Tenn. March 13, 2006) (adopting R&R and holding that property line dispute stated no plausible federal claim).

### 3. No Federal Claim Exists Under 42 U.S.C. § 1982

Although not articulated as a separate claim, the amended complaint includes an allegation that Defendants violated 42 U.S.C. § 1982. Section 1982 specifically provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982. The statute supports a private cause of action based on private racial discrimination relating to housing. *See, e.g., Campbell v. Robb,* 162 Fed. Appx. 460, 474–75 (6th Cir.2006) (outlining general requirements for a claim under § 1982).

For the same reasons that Plaintiffs fail to state any FHA claim, Plaintiffs' allegations fail to state any claim under 42 U.S.C. § 1982. *Contrast Wells v. Rhodes*, 928 F. Supp.2d 920, 926 (S.D. Ohio 2013) (acknowledging paucity of case law regarding the requirements for a § 1982 claim outside the context of discrimination in the sale or lease of property, but holding that plaintiff stated claim for incident in which defendants erected burning cross on plaintiffs' front lawn, on which they had written "KKK will make you pay" and "N***er").

### 4. No Supplemental Jurisdiction Over State Law Claims

Both the Supreme Court and Sixth Circuit have suggested that the retention of supplemental jurisdiction over a state law claim is appropriate *only* when the original federal claim has sufficient "substance" to confer jurisdiction of the subject matter on the court in which the action is commenced. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Province*, 787 F.2d at 1055 n.10 (federal courts possess some discretion on whether to retain a state law claim only assuming "that the federal claim was originally substantial enough to confer federal jurisdiction"). Having determined that no basis for federal jurisdiction exists due to Plaintiffs' failure to state any federal claim against the named Defendants, the undersigned further recommends that Plaintiffs' related state law claims be dismissed.

### D. Alternative Recommendation for Abstention

For the reasons stated, the undersigned recommends denial of Plaintiffs' motion for default judgment and *sua sponte* dismissal of this lawsuit for failure to state any federal claim. However, if (and only if) any reviewing court should disagree with the above analysis, the undersigned alternatively would recommend that this Court dismiss this case on grounds of abstention.

Despite Plaintiffs' attempts to cast this case as one of racial discrimination under federal law, it is abundantly clear that this case consists of an escalating quarrel between neighbors about a disputed property line. Following termination of the Plaintiffs' bankruptcy proceeding (or relief from the existing stay), that property line dispute will be resolved by the state court. If the state court holds that the disputed fence and gate are on the Cooleys' property and/or rules against the Plaintiffs on their claim of "adverse

possession" under state law, then most of the allegations about "threats" and "property damage" that underpin Plaintiffs' asserted federal claims will have to be reconsidered. Not only is the state court best equipped to resolve the underlying property line dispute, but state courts have concurrent jurisdiction to resolve FHA claims.  Thus, even if a reviewing court were to disagree with the undersigned and conclude that Plaintiffs' allegations state some form of federal claim under § 3617, any such claim still could be resolved by the state court.[14]

## II.      Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** Plaintiffs' motion for entry of default judgment and for other relief including a permanent injunction (Doc. 32) be **DENIED** and that this case be **DISMISSED in its entirety** for failure to state any federal claim and for lack of federal jurisdiction.


 s/ Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

---

[14] For multiple reasons, the Bankruptcy Court similarly concluded that permissive abstention was appropriate for resolution of the issues presented in the Adversary Petition.  By separate R&R filed this date, the undersigned recommends affirming the Bankruptcy Court and dismissing the appeal of Chief Judge Hopkins' Order.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

FRANKLIN DAVID HARRIS JR., et al.,

     Plaintiffs,

     v.

DANIEL COOLEY, et. al,

     Defendants.

Case No. 1:17-cv-540

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN  (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).